UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHAMBERS OF
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

CLARKSON S. FISHER FEDERAL
BUILDING & U.S. COURTHOUSE
402 EAST STATE STREET
TRENTON, N.J. 08608
609-989-2009

**NOT FOR PUBLICATION**

**LETTER OPINION & ORDER**
**Under Temporary Seal**

**VIA CM/ECF**
All counsel of record

>    Re:   *United States v. Carlo Amato*
>          Crim. No. 18-561 (MAS)

Dear Mr. Amato and Counsel:

This matter comes before the Court on Defendant Carlo Amato's ("Defendant" or "Mr. Amato") Motion for Compassionate Release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A). The Court has considered the parties' submissions, and for the reasons set forth below, denies Defendant's Motion without prejudice.

## I.   BACKGROUND

Defendant, a former chiropractor, is currently incarcerated at Allenwood Low Security Federal Correctional Institution ("FCI Allenwood Low") for offenses committed in connection with his chiropractic business. On September 19, 2018, Defendant pleaded guilty to a two-count Information charging him with (1) tax evasion and (2) failure to report his foreign bank account, while violating another federal law and as part of a pattern of illegal activity involving more than $100,000 in a twelve-month period. (ECF Nos. 1, 3, 5.) At the time of his federal plea, Defendant was in state custody awaiting sentencing for related offenses. (Plea Hr'g Tr. 25:13–26-3, 29:13–15, ECF No. 9.)

On May 7, 2019, this Court sentenced Defendant to a term of sixty months on each count, to run concurrently, followed by three years of supervised release. (J. 2-3, ECF No. 12.) In reaching its decision, the Court found that Defendant had not accepted responsibility for his actions. (Sentencing Tr. 18:9-15, ECF No. 13.) The Court, however, granted Defendant a variance based on his age, health conditions, and prior commendable acts. (*Id.* at 46:20–47:1.)

On May 9, 2019, the Superior Court of New Jersey sentenced Defendant to a ten-year prison term with five years of parole ineligibility on one count of money laundering, and a five-year prison term on one count of theft by deception, the terms to be served consecutively. (J.

of Conviction, Ex. 2 to Gov't's Opp'n Br., ECF No. 18-2.) The sentencing court also ordered that Defendant's state sentence run concurrent to his federal sentence. (*Id.*)

## II. PARTIES' POSITIONS

Defendant argues that his age of sixty and his numerous health conditions, including hypertension, obesity, and asthma, place him at a high risk of severe illness in the wake of COVID-19. (Def.'s Moving Br. *8–9, ECF No. 15.) Defendant also asserts that the Bureau of Prisons ("BOP"), and FCI Allenwood Low in particular, have not adequately managed the COVID-19 pandemic. (*Id.* at *15–19.) In addition, Defendant argues that the § 3553(a) factors weigh in favor of release. (*Id.* at *25–27.) In supplemental correspondence, Defendant argues that he is not a candidate to receive the COVID-19 vaccination due to a prior medical condition and again requests compassionate release based on the underlying conditions that make him vulnerable to the virus. (Def.'s Supp. Letter 1, ECF No. 22.)

In opposition, the Government acknowledges that Defendant "has cleared the threshold of presenting 'extraordinary and compelling reasons' allowing the Court to consider him for compassionate release." (Gov't's Opp'n Br. 7.) The Government argues that Defendant's hypertension and asthma are on the CDC's list of conditions that "might [create] an increased risk for severe illness from COVID-19." (*Id.*) According to the Government, Defendant's asthma is well-controlled and Mr. Amato's other ailments present no clearly established connection to COVID-19. (*Id.* at 7–8.) The Government also argues that FCI Allenwood has undertaken great efforts to mitigate the risks of COVID-19 for its inmates. (*Id.* at 9.) The Government further argues that based upon Defendant's state detainer, if released Mr. Amato would be transferred to a series of New Jersey state facilities, many of which have had greater numbers of COVID-19 cases than FCI Allenwood-Low. (*Id.* at 13.) In addition, the Government argues that the § 3553(a) factors weigh strongly against release. (*Id.* at 11–14.)

In supplemental opposition, the Government argues that Defendant's "claim that he is ineligible for the vaccine runs contrary to the CDC's guidance about the [contraindications] for the vaccine." (Gov't's Supp. Br. 1, ECF No. 23.) In support of its position, the Government provides an extensive discussion regarding the CDC's guidelines for two of the three currently available COVID-19 vaccines. (*Id.* at 2–5.) The Government also argues:

> [E]ven if Amato were truly ineligible for the vaccine, he is still better off than he previously was because inmates and staff around him are receiving the vaccine—at a much higher rate than the population in the community into which Amato seeks to be released—thereby decreasing Amato's own risk. At best for Amato, his not taking the vaccine does nothing to make him a *better* candidate for compassionate release. At worse, it removes him from the category of inmates eligible for compassionate release.

(*Id.* at 2.)

### III. LEGAL STANDARDS

A district court generally has limited authority to modify a federally-imposed sentence once it commences. *See United States v. Epstein*, No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020); *Dillon v. United States*, 560 U.S. 817, 825 (2010). The First Step Act ("FSA"), however, permits district courts to grant compassionate release where there exists "extraordinary and compelling reasons" to reduce a sentence. 18 U.S.C. § 3582(c)(1)(A)(i). The statute provides, in relevant part, that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction.

18 U.S.C. § 3582(c) (emphasis added). As such, under the FSA, "a defendant seeking a reduction in his term of imprisonment bears the burden of establishing both that he has satisfied (1) the procedural prerequisites for judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." *Epstein*, 2020 WL 1808616, at *2.

### IV. DISCUSSION

The U.S. Sentencing Commission's Policy Statement regarding the reduction of a defendant's sentence identifies non-exhaustive considerations that may support a finding of "compelling and extraordinary" reasons to warrant such reduction, including a defendant's medical condition. U.S.S.G. § 1B1.13, Application Note 1. In light of the COVID-19 pandemic, the inquiry into whether a defendant's medical conditions establish "compelling and extraordinary reasons" warranting a sentence reduction "has two components: (a) identification of a medical condition that renders the defendant particularly vulnerable to serious consequences if infected with COVID-19; and (b) the likelihood of COVID-19 infection, with particular reference to conditions in the institution in which the defendant is incarcerated." *United States v. Moore*, No. 19-101, 2020 WL 4282747, at *3 (D.N.J. July 27, 2020).

Here, Defendant asserts that he is sixty years old and "has a history of hypertension, obesity, asthma, pulmonary edema, hypothyroidism, kidney stones, neuropathy, and gastric ulcerations." (Def.'s Moving Br. *8.) Defendant argues that "[t]hese conditions, though he has many other serious and debilitating conditions, including spinal stenosis, discogenic headaches, osteoarthritis, post surgical spine, radiculopathy, degenerative disc disease, osteoporosis, and hypoganoidism [sic], make him especially vulnerable to COVID-19." (*Id.* at *8–9.) While hypertension, obesity, and moderate-to-severe asthma are risk factors for serious illness caused by

3

COVID-19, none of Defendant's conditions appears to currently place Defendant at significant medical risk. A review of Defendant's medical records reveals that Defendant, indeed, suffers from multiple medical conditions. For example, Defendant's medical records from the BOP reflect Defendant's hypertension, obesity, asthma, gout, and lumbar and cervical pain. (*See generally* BOP Medical Records, ECF No. 15-2, at \*19–59.) Defendant's records, however, do not support Defendant's assertion that he is currently "at grave risk [of] serious illness or death." (Def.'s Moving Br. \*22.) Defendant's medical records from the BOP indicate that:

- Defendant "is doing well generally."
- Defendant's "[l]ast hospitalization for asthma was an anaphylactic reaction to peanut oil and crab in 2011."
- Defendant "has a history of atrial fibrillation. Currently rhythm is regular. He has asthma, required intubation when younger."
- Defendant's asthma "has generally been well-controlled but he's allergic to a lot of things[.]"
- "Specht Myocardial Perfusion Stress test done on 1/15/2020 showed no inducible ischemia, no perfusion abnormalities, and LVEF 64% (post stress)."
- Defendant previously reported "he walks about [two] hours per day. He reports that in Lewisburg [he] played basketball, did yoga, and did the spin class. He states that he has been trying to [lose] weight."

(ECF No. 15-2, at \*19, \*23, \*31, \*34, \*58.) In addition, Defendant's primary complaints during his "Sick Call" visits related to his back pain and gout as opposed to his other medical conditions. For example, on February 23, 2020, Defendant indicated to Health Services "that he was in recreation [two] days ago when he tripped over his feet and twisted his lower back. Inmate states that he felt an instant sharp, shooting pain . . . [which] has gotten progressively worse." (*Id.* \*49.) Defendant then presented to Health Services on March 9, 2020 "complaining of continued sciatica. He reports that sciatic[a] was improving with the prednisone and Ibuprofen but seems to [have] worsened again. He reports that he does not [feel] that he can work in food services due to the pain in his back." (*Id.* at \*40.) Similarly, on July 20, 2020, Defendant presented to Health Services with the chief complaint of "flare of sciatic X 5-6 days" for back pain. (*Id.* \*36.) Here, the medical records reflect that the BOP has afforded Defendant regular and adequate care for his conditions. Furthermore, there is no indication that Defendant is not able to provide self-care or access medical treatment to manage his conditions. With Defendant's cooperation,[1] he can continue to address his health conditions appropriately.

With respect to the likelihood of COVID-19 infection, Defendant's Motion did not adequately address the state court detainer against him. With respect to Defendant's state court

---

[1] The Court notes that Defendant asserts several times in his moving brief that he is sixty-years old. *See, e.g.*, Moving Br. \*8 ("Mr. Amato is 60 years old"). Defendant even titled a subsection of his brief "Age 60" and stated again, "Mr. Amato is 60 years old." (*Id.* at \*11.) Defendant then asserted, "According to one source the case fatality rate for those in Mr. Amato's age group (60-69 years old) is a very sobering 3.6%." (*Id.* at \*12.) Defendant, however, is only fifty-nine years old. It is imperative that Defendant provide accurate information to his medical providers and the Court moving forward.

4

convictions, the New Jersey Department of Corrections' ("DOC") website reflects that Defendant has a current parole eligibility date of May 2, 2023 and a current maximum release date of December 27, 2028. https://www20.state.nj.us/DOC_Inmate/details?x=1551389&n=0 (last visited Mar. 17, 2021). Absent a demonstration by Defendant that he would be less likely to contract COVID in New Jersey's DOC's facilities as opposed to his current facility,[2] Defendant's detainer militates against compassionate release because it would not reduce Defendant's risk of contracting COVID-19.[3]

Consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a) also weigh against a reduction in sentence. Even though Defendant's offenses were non-violent, they were serious. At the plea hearing, Defendant admitted to evading $524,589 in taxes for the tax years 2012 through 2015. (Plea Hr'g Tr. 23:20–24:24.) As to count two, Defendant admitted that in 2014 he failed to report a bank account that he had in Russia. (*Id.* at 24:25–25-7, 26:12–15.) Defendant also admitted that from 2013 through 2016, he overbilled at least six insurance companies by more than $1 million and wired over $1.5 million into his bank account in Russia. (*Id.* at 25:8–16-3.) Moreover, at sentencing the Court found that Defendant had not accepted responsibility for his actions. (Sentencing Tr. 18:9-15, ECF No. 13.) In reaching its decision, the Court found that Defendant had not accepted responsibility based, in part, on correspondence that Defendant wrote to his wife in which he expressed his intent to flee while on supervised release and avoid payment of restitution. (*Id.*) The Court finds that reducing Defendant's sentence would not properly "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense[,]" or "afford adequate deterrence to criminal conduct[.]" 18 U.S.C. § 3553(a).

The Court is sympathetic to Defendant's medical conditions and his concerns regarding possible complications caused by COVID-19. Here, however, Defendant has not met his burden of demonstrating that compelling and extraordinary reasons exist to justify compassionate release.

---

[2] In his reply brief, Defendant asserts that "if he was in sole state custody[,] given the pandemic he would have likely been sent to home confinement." (Def.'s Reply Br. 8, ECF No. 20.) Absent adequate substantiation, any assertion that the NJ DOC would have granted Amato home confinement (or would grant Mr. Amato home confinement if the Undersigned grants compassionate release with respect to his federal sentence) is entirely speculative.

[3] In addition, Defendant did not adequately address or substantiate why he is not an appropriate candidate for a COVID-19 vaccine.

5

## V. ORDER

For the reasons set forth above,

**IT IS** on this 22nd day of March 2021, **ORDERED** that:

1. Defendant's Motion (ECF No. 15) is denied without prejudice.

2. The Clerk shall file this Letter Opinion & Order under Temporary Seal. By April 22, 2021, either party may file a Motion to Seal that complies with Local Civil Rule 5.3(c). If neither party files a Motion to Seal by this deadline, the seal on the Letter Opinion & Order will be lifted.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**
